Valerie GAITER, Petitioner,

v.

Elaine A. LORD, Superintendent, Bedford Hills Correctional Facility, Charles J. Hynes, District Attorney, County of Kings, Dennis Vacco, Attorney General of the State of New York, Respondents.

Civ. A. No. CV–94–2220 (DGT).

United States District Court, E.D. New York.

Feb. 9, 1996.

Valerie Gaiter, Plaintiff Pro Se.

Amy Applebaum, Asst. Dist. Atty., Brooklyn, New York, for Defendant.

## MEMORANDUM AND ORDER

TRAGER, District Judge:

This is a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Although the petition is less than clear, petitioner, Valerie Gaiter, appears to raise the following claims: (1) she was denied a fair trial because the statements of her accomplice that were admitted into evidence were not sufficiently corroborated at trial; (2) her right to be present during trial was violated because she was absent from jury voir dire and sidebar discussions during jury voir dire; (3) she was denied the right to a fair trial because of prosecutorial misconduct in closing remarks; and (4) her sentences constituted an abuse of discretion.

### Background

On August 21, 1979, Detective Thomas Milana responded to a phone call reporting a robbery and double homicide in the Midwood section of Brooklyn, New York. Tr. at 8–9. After he entered apartment 4J at 755 Ocean Avenue, Detective Milana found the bodies of an elderly couple, Roz and Louis Feit, with multiple stab wounds. Tr. at 9. The building's porter, Abdul Rasheed, told Detective Milana that two young girls, Valerie Gaiter and the Feit's seventeen-year-old neighbor, co-defendant Roslyn Smith, robbed him at about midnight on August 20, 1979.[1] Tr. at 9–12, 375–380. Smith's parents told Detective Milana that Smith and Gaiter had returned to the apartment on the evening of August 20, 1979, for a change of clothes, and did not return to the apartment that night. Tr. at 12–13.

While being questioned by police detectives on August 21, 1979, Gaiter and Smith admitted their involvement in the Feits' murders. At trial, Gaiter testified that Smith rang the Feits' doorbell and persuaded Mrs. Feit to open the door by stating that her parents were fighting and she needed to use the Feits' phone to call the police. Tr. at 945. Gaiter claimed that once they were inside the apartment, Smith grabbed Mrs. Feit, found a knife in a drawer and stabbed her repeatedly. Tr. at 949. Smith then handed Gaiter the knife, and Gaiter stabbed Mrs. Feit approximately three times. Tr. at 950, 951. Gaiter claimed that while she went into the bathroom to wash the blood off of her hands, Smith stabbed the bedridden Mr. Feit several times.[2] Tr. at 952. Gaiter claimed that she placed a pillow over Mr. Feit's face while Smith stabbed him because he was "making little noises." Tr. at 980. Subsequently Gaiter and Smith searched the apartment for money. Tr. at 953. Gaiter and Smith then left the apartment and spent the remainder of the night in a neighborhood park. Tr. at 955.

At trial, however, Smith testified that Gaiter initiated the knocking on the Feits' door and persuading Mrs. Feit to allow her into the apartment. Tr. at 816. Smith claimed that she did not enter the apartment, but stood in the hall waiting for Gaiter. Tr. at 889. Smith claimed that Gaiter remained in the apartment for approximately ten minutes, and after exiting the apartment, Gaiter told her "I got some money from the bitch. Come on. Let's go." Tr. at 818. Smith claimed that she and Gaiter then left the building, bought marijuana and rum and spent the remainder of the night outside. Tr. at 818.

Gaiter and Smith were charged by Kings County Indictment Number 3050/79 with four counts of Murder in the Second Degree, N.Y.Penal Law § 125.25[1], [3] and two counts of Robbery in the First Degree, N.Y.Penal L. § 160.15[3]. Pet'r Appeal Brf. at 3. On July 9, 1980, Gaiter was convicted after a joint jury trial of two counts of murder in the second degree and two counts of robbery in the first degree.[3] Tr. at 1140. Gaiter was subsequently sentenced to two consecutive indeterminate terms of imprisonment of twenty-five years to life for the felony murder charges to run consecutively with the two consecutive indeterminate terms of imprisonment of eight and one-third to

---

1. Mr. Rasheed did not file charges against the two girls because they subsequently returned his property. Tr. at 380.

2. The deputy chief Medical examiner, Milton A. Wald, M.D., testified that Louis Feit had approximately 59 stab wounds and Roz Feit had approximately 28 stab wounds. Tr. at 327–30, 340.

3. At the same time, Smith was convicted of two counts of robbery in the first degree, two counts of felony murder and two counts of intentional murder. Tr. at 1141–42.

twenty-five years for the robbery charges. Pet'r Appeal Brf. at 26.

Gaiter appealed her conviction to the Appellate Division, Second Department. On appeal, Gaiter argued that the trial court: 1) erred in admitting Gaiter's statements to the police and to the assistant district attorney in violation of *Miranda*; 2) failed to properly instruct the jury with regard to *Miranda* warnings; 3) improperly convicted Gaiter for felony-murder where the underlying felony did not require a finding of specific intent; 4) erred in imposing consecutive sentences where there was but a single act; and 5) imposed excessive sentences. Pet'r App.Br. at i–ii. The Appellate Division affirmed Gaiter's conviction, but modified her robbery sentences to run concurrently, rather than consecutively, to the murder sentences. *People v. Smith and Gaiter*, 89 A.D.2d 881, 881–82, 453 N.Y.S.2d 226, 228 (2d Dep't 1982). The Appellate Division found the remainder of Gaiter's claims without merit. *Id.* at 882, 453 N.Y.S.2d at 228.

On May 24, 1993, Gaiter filed a pro se motion to vacate the judgment pursuant to New York Criminal Procedure L. § 440.10. Gaiter argued that: 1) her confession was obtained in violation of the Federal and State Constitutions; 2) her accomplice's statements were not sufficiently corroborated at trial; 3) the introduction of co-defendant's statement into evidence violated *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); 4) her absence from jury voir dire and sidebar discussions during trial deprived her of a fair trial; 5) the prosecutor's closing remarks deprived her of a fair trial; and 6) defendant's sentences constituted an abuse of discretion. The first and sixth claims were identical to those raised on direct appeal. The Supreme Court, Kings County, denied Gaiter's application on all grounds finding them either procedurally barred or without merit. *New York v. Gaiter*, No. 3050/79 (N.Y.Sup.Ct. Aug. 19, 1993). On October 28, 1993, the Appellate Division, Second Department denied Gaiter's application for leave to appeal the Supreme Court's denial of her motion to vacate the judgment. Subsequently, the New York Court of Appeals denied Gaiter's request for leave to appeal from the decision of the Appellate Division.

## Discussion

### (1)

Gaiter filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on grounds identical to that raising four of the six claims she had made in her motion to vacate her judgment of conviction. Specifically, Gaiter argues that: (1) she was denied a fair trial because her accomplice's statements were not sufficiently corroborated at trial; (2) she was denied a fair trial because she was absent from jury voir dire and sidebar discussions during trial; (3) she was denied the right to a fair trial because of prosecutorial misconduct in closing remarks; and (4) her sentences constituted an abuse of discretion. *See* Pet. at 5–6; Pet'r Mem.Supp.Hab.Corpus at 12. Gaiter's petition must be dismissed because an independent and adequate basis exists in state law for denying the claims, and in any case, because the claims lack merit. *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–09, 53 L.Ed.2d 594 (1977).

### (2)

The Appellate Division and the New York Court of Appeals rejected all of Gaiter's claims in her § 440.10 motion on the ground that she failed to raise these claims on direct appeal when she had the ability and opportunity to do so. *Gaiter*, No. 3050/79 at 3; *see also People v. Cooks*, 67 N.Y.2d 100, 103, 491 N.E.2d 676, 678, 500 N.Y.S.2d 503, 505 (1986). The Appellate Division relied on the provision of § 440.10 of the New York Criminal Procedure L. which states that a court must deny a motion to vacate judgment when issues raised upon the motion did not receive appellate review due to "defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to [her] unjustifiable failure to raise such ground or issue upon an appeal actually perfected by [her]." Gaiter, therefore, was prohibited from using Crim.Proc.L. § 440.10 as a substitute for direct appeal when she had the opportunity to raise the issues on direct appeal. *Cooks, supra*, 67 N.Y.2d at 103, 491 N.E.2d at 677, 500 N.Y.S.2d at 505; *see*

*People ex rel. Gibbs v. Vincent*, 39 N.Y.2d 918, 352 N.E.2d 592, 386 N.Y.S.2d 405 (1976).

■ Federal courts have continuously held that the failure to comply with Criminal Procedure L. § 440.10 is an independent and adequate state ground to dismiss a writ of federal habeas corpus. *See Coleman v. Thompson*, 501 U.S. 722, 730, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991) (state court's judgment rests on independent and adequate state grounds where petitioner fails to meet state procedural requirements); *see also Wainwright, supra*, 433 U.S. at 81, 97 S.Ct. at 2503–04; *Ulster County Ct. v. Allen*, 442 U.S. 140, 148, 99 S.Ct. 2213, 2220, 60 L.Ed.2d 777 (1979). It is well established that a federal court should not review a question of federal law decided by a state court if the state court's decision is based on independent and adequate state substantive or procedural law. *Thompson, supra*, 501 U.S. at 729, 111 S.Ct. at 2553–54; *Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed. 158 (1935).

■ Even though an independent and adequate basis exists in state law for dismissing Gaiter's claims, this Court may review Gaiter's claims if she can demonstrate an adequate cause for her procedural default and actual prejudice resulting from the default, or that a fundamental miscarriage of justice would result if her claims were not considered. *See, Wainwright, supra*, 433 U.S. at 87, 97 S.Ct. at 2506–07 (1977); *Farrell v. Lane*, 939 F.2d 409, 411 (7th Cir.1991); *Thompson, supra*, 501 U.S. at 724, 111 S.Ct. at 2551. Although petitioner has not alleged any specific cause for her procedural default, this Court will, nevertheless, examine the issue sua sponte.[4] Upon review of the record, the only cause petitioner could have alleged for her procedural default was that she was denied the effective assistance of counsel.

While ineffective assistance of counsel may constitute a cause for a procedural default, the exhaustion doctrine "requires that a claim of ineffective assistance be presented to state courts as an independent claim before it may be used to establish cause for a procedural default" in the context of a petition for a federal writ of habeas corpus. *Murray v. Carrier*, 477 U.S. 478, 489, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986); *see also Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982); U.S.C.A. Constitutional Amend. 6. Raising the claim of ineffective assistance in a writ for habeas corpus would bring before this Court an "independent and unexhausted constitutional claim." *Carrier, supra*, 477 U.S. at 489, 106 S.Ct. at 2646. Thus, as Gaiter has not alleged ineffective assistance of counsel as a separate claim and has not justified her failure to comport with New York State's procedural rules, her claim of ineffective assistance cannot be held as an adequate cause for her procedural default in state court. *Carrier, supra*, 477 U.S. at 489, 106 S.Ct. at 2646; *Amadeo v. Zant*, 486 U.S. 214, 221–22, 108 S.Ct. 1771, 1776–77, 100 L.Ed.2d 249 (1988).

■ Aside from failing to allege, let alone prove, cause for her procedural default in state court, Gaiter cannot establish that either prejudice or a fundamental miscarriage of justice would result if her claims were not considered here. Nothing in the record indicates that the alleged trial errors resulted in Gaiter's conviction of a crime of which she was likely to be innocent. Notwithstanding the claimed trial errors, Gaiter's testimony alone provided ample evidence from which the jury could find Gaiter guilty. Although Gaiter and Smith had different renditions of the crime, Gaiter admitted to stabbing Mrs. Feit, placing a pillow over Mr. Feit's face while Smith stabbed him and robbing the apartment. Tr. at 950, 951, 953, 980. Thus, even if all the evidence that was allegedly

4. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam) (pro se petitions held to less stringent standards than those drafted by an attorney); *Williams v. Ward*, 556 F.2d 1143, 1151 (2d Cir. 1977), *cert. denied*, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977). *See also Lowrance v. Achtyl, et al.*, 20 F.3d 529, 535 (2d Cir.1994) (court construed petition as alleging a violation of due process where pro se petitioner claimed that prison officials placed him in administrative segregation while awaiting a disciplinary hearing, and petitioner was not given an adequate opportunity to be heard during the hearing).

improperly received and the other alleged errors were removed from the case, the evidence of Gaiter's guilt would be overwhelming, see *People v. Green*, 183 A.D.2d 617, 584 N.Y.S.2d 37 (1st Dep't 1992), and the jury's determination should not be overturned lightly in the face of such powerful evidence. *See United States v. Shulman*, 624 F.2d 384, 388 (2d Cir.1980); *Underwood v. Kelly*, 692 F.Supp. 146, 150 (E.D.N.Y.1988), *aff'd*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989).

Accordingly, an independent and adequate basis exists in state procedural law for denying federal habeas corpus relief. Further, Gaiter can establish neither that cause existed for her procedural default nor that a fundamental miscarriage of justice would result if this Court were not to consider the claims. Therefore, this Court must dismiss all of Gaiter's claims for a writ of habeas corpus. Nevertheless, because portions of the record were unavailable for an extended period of time, this court spent substantial effort reviewing the merits of petitioner's claims. To avoid waste of judicial efforts, the court has examined each of petitioner's claims.

### (3)

■ Gaiter's first claim, that she was denied a fair trial because her accomplice's statements were not sufficiently corroborated at trial, should be dismissed as it is based on state law. As a result it is not cognizable in a petition for a federal writ of habeas corpus. This claim does not rise to the level of a constitutional violation because the Federal Constitution does not prohibit the conviction of a defendant based on the uncorroborated testimony of an accomplice. Unlike their state counterparts, federal courts permit a conviction to rest solely on the uncorroborated testimony of an accomplice if the accomplice's testimony is credible. *Williamson v. United States*, 365 F.2d 12, 14 (5th Cir.1966); *Tillery v. United States*, 411 F.2d 644, 647 (5th Cir.1969); *United States v. Stanley*, 433 F.2d 637, 638 (5th Cir.1970); *see also, United States v. Wright*, 573 F.2d 681

(1st Cir.), *cert. denied*, 436 U.S. 949, 98 S.Ct. 2857, 56 L.Ed.2d 792 (1978); *United States v. Trevino*, 565 F.2d 1317 (5th Cir.1978), *cert. denied*, 435 U.S. 971, 98 S.Ct. 1613, 56 L.Ed.2d 63 (1978). Although Smith's testimony differed from Gaiter's in terms of Gaiter's involvement in the crime, assessing Smith's credibility was a decision for the jury. Thus, Smith's testimony, even if uncorroborated, would be sufficient to warrant Gaiter's conviction under federal constitutional law.

■ Moreover, even if Gaiter's first claim reflected federal law, the claim is without merit because Gaiter herself corroborated Smith's testimony at trial by admitting that she participated in the murder of Louis and Roz Feit.[5] Tr. at 950, 951, 953. Section 60.22[1] of the New York Criminal Procedure Law mandates that an accomplice's testimony be corroborated by evidence "tending to connect the defendant with the commission of such offense." The corroborative evidence "must be independent of, and may not draw its weight and probative value from the accomplice's testimony." *People v. Steinberg*, 79 N.Y.2d 673, 683, 595 N.E.2d 845, 849, 584 N.Y.S.2d 770, 774 (1992); *People v. Moses*, 63 N.Y.2d 299, 306, 472 N.E.2d 4, 7, 482 N.Y.S.2d 228, 231 (1984); *People v. Hudson*, 51 N.Y.2d 233, 238, 414 N.E.2d 385, 387–88, 433 N.Y.S.2d 1004, 1007 (1980). Although, as noted, Gaiter's testimony differed from Smith's in terms of her degree of involvement in the crime, Crim.Proc.L. § 60.22(1) merely requires that the corroborative testimony "connect the defendant with the commission of the crime to be proven, not to prove [she] committed it." *People v. Smith*, 55 N.Y.2d 945, 946, 434 N.E.2d 246, 246, 449 N.Y.S.2d 177, 177 (1982); *Steinberg, supra*, 79 N.Y.2d at 683, 595 N.E.2d at 849, 584 N.Y.S.2d at 774; *Hudson, supra*, 51 N.Y.2d at 238, 414 N.E.2d at 387, 433 N.Y.S.2d at 1007; *People v. Cunningham*, 48 N.Y.2d 938, 940, 401 N.E.2d 182, 182–83, 425 N.Y.S.2d 59, 59 (1979); *People v. Daniels*, 37 N.Y.2d 624, 629, 339 N.E.2d 139, 141, 376 N.Y.S.2d 436, 440 (1975). Gaiter's testimony, both at trial

---

**5.** In determining whether the evidence was legally sufficient to sustain the conviction, courts view the evidence in a light most favorable to the People. *People v. Contes*, 60 N.Y.2d 620, 621, 454 N.E.2d 932, 932–33, 467 N.Y.S.2d 349, 349–50 (1983).

and at the police station on the night following the murders, in which she admitted stabbing Mrs. Feit three times and placing a pillow over Mr. Feit's face while Smith stabbed him, not only connects Gaiter to the crime, but it also establishes that Gaiter was a participant in the crime. Thus, Gaiter's own testimony was sufficient to meet the "tending to connect" standard of Crim. Proc.L. § 60.22(1) by establishing the necessary link between her and the crime.[6] *Cunningham, supra,* 48 N.Y.2d at 940, 401 N.E.2d at 183, 425 N.Y.S.2d at 59. Smith's testimony, therefore, was corroborated at trial by Gaiter's testimony and was thus legally sufficient for a guilty verdict.[7]

### (4)

Gaiter's second claim, which alleges that her right to be present was violated by her alleged absence from jury voir dire and sidebar discussions during trial,[8] is also without merit because Gaiter offers no proof that she was absent from jury voir dire or that she was excluded from sidebar discussions during trial. It has long been established that the Confrontation Clause protects a defendant's fundamental right to be present in the courtroom at every stage of his trial. *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Lewis v. United States,* 146 U.S. 370, 372, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892); U.S. Const. amend. VI. Rule 43 of the N.Y.Crim.Proc.L. requires that defendants "be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict...." *United States v. Gagnon,* 470 U.S. 522, 525, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985). Gaiter, however, has failed to submit any proof from the

record or otherwise that she was not present during jury voir dire despite her assertions that she was absent.[9] Gaiter's claim that she was absent from jury voir dire, therefore, must be rejected.

■ Second, Gaiter's claim is without merit because her presence at the alleged sidebar discussions was not mandated under the broader state rule and certainly not under federal law. Section 260.20 of the New York Criminal Procedure Law provides, in pertinent part, that "[a] defendant must be personally present during the trial of an indictment." N.Y.Crim.Proc.L. § 260.20 (McKinney 1993). The term "trial" includes the material stages of a trial such as the impaneling of a jury, the introduction of evidence, counsel summations and the court's charge to the jury. *People v. Antommarchi,* 80 N.Y.2d 247, 250, 604 N.E.2d 95, 97, 590 N.Y.S.2d 33, 35, *rearg. denied,* 81 N.Y.2d 759, 610 N.E.2d 393, 594 N.Y.S.2d 720 (1992); *People v. Sloan,* 79 N.Y.2d 386, 391, 592 N.E.2d 784, 786, 583 N.Y.S.2d 176, 178 (1992); *People v. Mullen,* 44 N.Y.2d 1, 4, 374 N.E.2d 369, 370, 403 N.Y.S.2d 470, 472 (1978); *People v. Velasco,* 77 N.Y.2d 469, 472, 570 N.E.2d 1070, 1071, 568 N.Y.S.2d 721, 722 (1991); *Maurer v. People,* 43 N.Y. 1, 3 (1870). Later courts have extended this right to be present during jury voir dire and sidebar discussions when the merits of the case are addressed. *Antommarchi, supra,* 80 N.Y.2d at 250, 604 N.E.2d at 97, 590 N.Y.S.2d at 35; *Sloan, supra,* 79 N.Y.2d at 392–93, 592 N.E.2d at 786–87, 583 N.Y.S.2d at 178–79. Gaiter, however, has failed to allege the nature of the sidebar discussions or submit any proof that the alleged sidebars actually occurred. Order Denying 1993 Mot.Vac. at 3. Thus, without sufficient proof that the al-

---

6. *Steinberg, supra,* 79 N.Y.2d at 683, 595 N.E.2d at 849, 584 N.Y.S.2d at 774. *See also People v. White,* 147 A.D.2d 967, 537 N.Y.S.2d 713 (4th Dep't 1989); *People v. Strickler,* 134 A.D.2d 631, 522 N.Y.S.2d 6 (2d Dep't 1987).

7. Once the statutory requirement of Crim.Proc.L. § 60.22 is met, the jury determines whether the corroborative evidence proves that the accomplice is telling the truth. *Steinberg, supra,* 79 N.Y.2d at 683, 595 N.E.2d at 849, 584 N.Y.S.2d at 774; *see also, People v. Glasper,* 52 N.Y.2d 970, 971, 420 N.E.2d 80, 80, 438 N.Y.S.2d 282, 282 (1981); *People v. Fiore,* 12 N.Y.2d 188, 201–202,

188 N.E.2d 130, 136, 237 N.Y.S.2d 698, 706 (1962).

8. Petitioner alleges that she was not present during jury selection or at any of the sidebar discussions that took place during her trial. Mem. Supp.1993 Mot.Vac. at 12.

9. No evidence can be found in the record supporting Gaiter's claim that she was absent during jury voir dire. In addition, Gaiter's attorney did not raise this claim on direct appeal.

leged conversations touched upon the merits of her case, under New York law Gaiter's presence was not required at the alleged conversations between the court, the attorneys and the prospective jurors. *Velasco, supra,* 77 N.Y.2d at 473, 570 N.E.2d at 1071, 568 N.Y.S.2d at 722 (defendant did not have a right to be present during informal questioning of prospective jurors that related only to grounds for juror disqualification); *Mullen, supra,* 44 N.Y.2d at 1, 374 N.E.2d at 369, 403 N.Y.S.2d at 470 (questioning of a juror for possible juror disqualification did not constitute a material part of trial requiring defendant's presence). Thus, Gaiter's statutory right to be present, codified in N.Y.Crim. Proc.L. § 260.20, was not violated.

Moreover, the New York rule requiring a criminal defendant's presence at bench conferences at which the merits of the case are addressed, *Antommarchi, supra,* 80 N.Y.2d at 250, 604 N.E.2d at 97, 590 N.Y.S.2d at 35, would not apply to Gaiter. In *People v. Mitchell,* 80 N.Y.2d 519, 528, 606 N.E.2d 1381, 1386, 591 N.Y.S.2d 990, 995, the Court of Appeals, applying the factors set forth in *People v. Pepper,* 53 N.Y.2d 213, 423 N.E.2d 366, 440 N.Y.S.2d 889 (1981), *cert. denied,* 454 U.S. 967, 102 S.Ct. 510, 70 L.Ed.2d 383,

concluded that the rule requiring a criminal defendant's presence at sidebar discussions relating to the merits of the case should apply prospectively and not retroactively.[10] Thus, state law would not require the retroactive application of the sidebar rule to Gaiter's claim.[11]

■ In any case, Gaiter's claim that she was absent from sidebar conferences during trial does not rise to the level of a constitutional violation because the Federal Constitution does not require a defendant's presence at sidebar conferences.[12] *People v. Mitchell,* 80 N.Y.2d 519, 527, 606 N.E.2d 1381, 1385, 591 N.Y.S.2d 990, 994 (1992); *United States v. Washington,* 705 F.2d 489, 498 n. 5 (D.C.Cir.1983). Although the Due Process Clause requires the presence of defendants during criminal proceedings "to the extent that a fair and just hearing would be thwarted by [their] absence ...", *Mitchell, supra,* 80 N.Y.2d at 526, 606 N.E.2d at 1384, 591 N.Y.S.2d at 993 (citing *Snyder v. Massachusetts,* 291 U.S. 97, 107–108, 54 S.Ct. 330, 332–333, 78 L.Ed. 674 (1934)), Gaiter's presence was not required at the alleged sidebar discussions because her absence would not have had "a substantial effect on [her] ability to defend." [13] *Snyder, supra,* 291 U.S. at

**10.** In *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987), the Supreme Court concluded that new constitutional rules must be applied retroactively to all cases pending on direct review; *Mitchell, supra,* 80 N.Y.2d at 525, 606 N.E.2d at 1384, 591 N.Y.S.2d at 993. In *People v. Pepper,* the New York Court of Appeals, however, held that the *Griffith* rule was not binding on it because retroactivity of state law changes remain a question of state law. Thus, state courts have the power to determine whether the rules they create are to be applied retroactively. *Mitchell, supra,* 80 N.Y.2d at 526, 606 N.E.2d at 1384, 591 N.Y.S.2d at 993. Since the *Antommarchi* rule was based on State law, the court was free to apply State rules on retroactivity. *Mitchell, supra,* 80 N.Y.2d at 527, 606 N.E.2d at 1385, 591 N.Y.S.2d at 994.

Adopting the *Pepper* test, the Court applied three factors to determine whether the rule should be given retroactive effect: 1) the purpose to be served by the new rule; 2) the extent of the reliance on the old rule; and 3) the effect on the administration of justice of retroactive application. 53 N.Y.2d at 220, 423 N.E.2d at 369, 440 N.Y.S.2d at 892. The Court held that: 1) the purpose of the new rule was to grant defendants a more active role in jury selection and not to cure a constitutional infirmity; 2) the courts have relied extensively on the old rule; and 3)

since a great majority of the cases on appeal present similar questions as to the presence of criminal defendants at side-bar discussions during jury selection, the retroactive application of the new law would substantially burden the administration of justice. *Mitchell, supra,* 80 N.Y.2d at 528–29, 606 N.E.2d at 1386, 591 N.Y.S.2d at 995.

**11.** Valerie Gaiter was convicted on July 9, 1980. Tr. at 1140–41.

**12.** No evidence in the record can be found supporting Gaiter's claim that she was absent from side bar conferences during the trial. In addition, Gaiter's attorney did not raise this claim on direct appeal. *See* Order Denying Mot.Vac. at 3 (defendant failed to set forth the nature of the alleged sidebar conversations and failed to submit any proof that the conversations actually occurred).

**13.** The federal constitutional right to be present is rooted in both the Sixth Amendment and the Due Process Clause. The Sixth Amendment, however, applies when the defendant has been prohibited from confronting the witnesses or evidence against him. When the defendant is not confronting witnesses or the evidence against

108, 54 S.Ct. at 333. Thus, Gaiter's alleged absence from sidebar discussions—without more—raises no federal claim.

### (5)

■■ Gaiter's third claim—that she was denied the right to a fair trial because of prosecutorial misconduct in closing remarks—is without merit because the cited claim of errors did not impede the jury's task of rendering a fair and just decision.. Gaiter claims that the prosecutor expressed her personal opinion in her summation to the jury, thereby presenting unsworn assertions to the jury. Gaiter, however, fails to provide any proof that the prosecutor asserted her personal beliefs during her summation to the jury.[14] The only claimed error that petitioner points to is that the prosecutor stated that the defendant committed the crimes with "malice aforethought."[15] *See* Mem.Supp. 1993 Mot.Vac. at 13. The record of summation, however, does not reveal that the prosecutor ever stated that Gaiter committed the crimes with malice aforethought. Even if the record did support Gaiter's claim, a criminal defendant is not denied a fair trial by a prosecutor's statement of law on summation. *See People v. Hart,* 176 A.D.2d 148, 149, 574 N.Y.S.2d 33, 34 (1st Dep't 1991) (defendant not denied a fair trial when prosecutor makes

a correct statement of law on summation). At trial, Gaiter was charged with intentional murder. Tr. at 1140–41. Thus, the prosecutor was permitted to attempt to illustrate to the jury that the requisite mens rea was present for the crime of intentional murder.

■■ The standard governing a federal court's review of habeas petitions based upon a claim of prosecutorial misconduct is whether the claimed errors are "ordinary trial error[s] of a prosecutor [or] that sort of egregious misconduct ... amounting to a denial of constitutional due process." *Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1990) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 647–48, 94 S.Ct. 1868, 1873–74, 40 L.Ed.2d 431 (1974)). Constitutional error exists only when the prosecutor's remarks "were so prejudicial that they rendered the trial in question fundamentally unfair." *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir. 1986); *Cobb v. Wainwright,* 609 F.2d 754, 756 (5th Cir.1980), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 857 (1980). Unlike *Floyd,* where the cumulative effect of the prosecutor's statements amounted to the type of egregious conduct that rendered Floyd's trial fundamentally unfair,[16] the brief and isolated errors claimed in Gaiter's case

him, the Due Process Clause applies. *Mitchell, supra,* 80 N.Y.2d at 526, 606 N.E.2d at 1384, 591 N.Y.S.2d at 993; *see also United States v. Gagnon,* 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). The right to be present depends upon the factual circumstances of each case and thus is not absolute. *Mitchell, supra,* 80 N.Y.2d at 526, 606 N.E.2d at 1384, 591 N.Y.S.2d at 993.

14. Smith, in her brief on direct appeal, however, alleged that the prosecutor improperly stated that: Smith's witnesses, who primarily were family, lied to the jury; that Smith "plunged the knife into those people"; that "society requires that killers be brought to justice"; asked the jury to consider how their friends would react to Smith's story; that the prosecutor urged the jury to "return a verdict they can live with"; and repeatedly accused Smith of trying to "bail out";. Co-defendant's brief at 38–40. The Appellate Division, Second Department, found this claim without merit. *See* 89 A.D.2d at 882, 453 N.Y.S.2d 226.

15. The only other statements that Gaiter could possibly have challenged as improper were: 1)

society required that the killers of Mr. and Mrs. Fair be brought to justice; 2) the deaths of Mr. and Mrs. Feit were a "cold and calculating team effort by Roslyn Smith and Valerie Gaiter;" 3) "as the life is oozing out of these people, these two are coolly and calmly and methodically rifling that apartment" and 4) asking the jury to return a verdict that the jury could live with. Tr. at 1041, 1044, 1059, 1062. The first statement, that society requires that killers be brought to justice, was objected to at trial and restated on the record by Smith's attorney as "society requires a fair, a just verdict and nothing further." Tr. at 1041.

The Appellate Division, Second Department, on Smith's direct appeal, rejected challenges to similar statements as without merit. *See* 89 A.D.2d at 882, 453 N.Y.S.2d 226.

16. In *Floyd,* the prosecutor, on at least 30 occasions, called the defendant a "liar"; invoked the Fifth Amendment as a commentary on Floyd's failure to testify; and gave her personal "voucher" for the credibility of the State's key witness. *Floyd, supra,* 907 F.2d at 352.

do not rise to the level of egregious conduct.[17]

 Furthermore, even if the prosecutor's statement that Gaiter committed the crime with malice aforethought was improper, Gaiter has failed to establish inherent or actual prejudice resulting from the alleged error. *Garofolo, supra,* 804 F.2d at 206. Not only has Gaiter failed to submit any proof that she was substantially prejudiced by the prosecutor's statement, but, in fact, Gaiter was acquitted of intentional murder, the only charge which required the people to establish malice aforethought.[18] Mem.Opp'n 1993 Mot.Vac. at 15–16. Thus, the alleged prosecutorial misconduct does not rise to the level of a constitutional error because the alleged misconduct clearly had no prejudicial effect on Gaiter's trial, and certainly did not render her trial fundamentally unfair.

### (6)

 Gaiter's fourth claim—that her consecutive sentences of imprisonment for felony murder constituted an abuse of discretion—is without merit because there were sufficient facts on the record to justify the imposition of consecutive terms of imprisonment for the two separate murders.[19] Gaiter claims that her felony murder sentences should run concurrently with each other because the two murders arose out of one act of robbery.[20] The sentencing court, however, had the discretion to direct that Gaiter's sentences run concurrently or consecutively. N.Y.Penal L. § 70.25(1) (McKinney 1987).

Although the murders arose out of one act of robbery, Mr. and Mrs. Feit's deaths were the result of two separate acts. *See People v. Brathwaite,* 63 N.Y.2d 839, 843, 472 N.E.2d 29, 32, 482 N.Y.S.2d 253, 256 (1984) (where two deaths occurred during the course of one robbery, the deaths constituted separate "acts" which justified the imposition of consecutive sentences for two counts of felony murder). Thus, it was within the discretion of the sentencing court to view the two murders as separate acts within the course of the robbery justifying the imposition of consecutive sentences for the felony murder counts. But even if the murders did not constitute two separate acts, the issue whether Gaiter's sentence violated § 70.25(2) of the Penal Law is one of state law and thus not reviewable by a federal court.

 Although Gaiter has not specifically alleged that her consecutive sentences for felony murder were constitutionally excessive, this Court will, nevertheless, for the sake of completeness and to avoid unnecessary future litigation, examine the issue. *Haines, supra,* 404 U.S. at 520–521, 92 S.Ct. at 595–596. Gaiter was found guilty of two counts of felony murder, a class A–1 felony. *See* N.Y.Penal L. § 125.25 (McKinney 1987). In New York, the maximum term of incarceration for this level of offense is fifteen to twenty-five years. *See* N.Y.Penal L. § 70.00(3)(a)(i). It was well within the sentencing judge's discretion to sentence Gaiter to the maximum terms of imprisonment. This determination can be overturned only if

17. In *Floyd,* the Second Circuit emphasized that their decision differed from other appeals raising claims of prosecutorial misconduct in that Floyd's trial did not involve one or isolated episodes of prosecutorial misconduct. *Floyd, supra,* 907 F.2d at 353.

18. Gaiter was convicted of two counts of felony murder (N.Y.Penal L. s 125.25[3] ). "The crime of felony murder does not have as an element an intent to kill or 'malice aforethought' ". *People v. Davis,* 128 Misc.2d 782, 784, 491 N.Y.S.2d 240, 242 (N.Y.Sup.1985); *People v. Benson,* 125 Misc.2d 843, 846, 480 N.Y.S.2d 811, 813 (N.Y.Sup.1984); *see also* P.L. 125.25[3].

19. On direct appeal, Gaiter claimed that her robbery sentences should run concurrently rather ·than consecutively to her murder sentences. The Appellate Division accordingly modified Gaiter's

robbery sentences to run concurrently to the murder sentences because there was no evidence of two distinct acts of robbery. *Smith, supra,* 89 A.D.2d at 881, 453 N.Y.S.2d at 226. It is unclear as to whether Gaiter subsequently raised this claim in her motion to vacate judgment or the claim that her murder sentences should run concurrently. In any event, the Supreme Court, Kings County, denied Gaiter's application on all grounds. Order Denying Mot.Vac. at 4.

20. Gaiter relies in part on § 70.25(2) of the Penal L. which provides that:

When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and was a material element of the other, the sentences must run concurrently.

the sentence imposed was so "significantly disproportionate" to the crime committed as to constitute "cruel and unusual" punishment within the meaning of the Eighth Amendment. *See Solem v. Helm,* 463 U.S. 277, 295–303, 103 S.Ct. 3001, 3012–3017, 77 L.Ed.2d 637 (1983).[21] In addition, given the deference that must be accorded to the state legislature and sentencing court, this Court must assume the penalty's validity and the burden rests with the petitioner to prove it is constitutionally infirm. *See Solem, supra,* 463 U.S. at 290, 103 S.Ct. at 3009–10; *Carmona v. Ward,* 576 F.2d 405, 410 (2d Cir. 1978), *cert. denied,* 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 58 (1979). Here, the petitioner cannot sustain the burden.

The federal courts have consistently held sentences such as the one imposed, and even those which are more severe, are not violative of the Constitution.[22] Accordingly, Gaiter's sentence of fifty years to life for the deaths of Mr. and Mrs. Feit does not violate the Eighth Amendment, and thus Gaiter's claim must be rejected.

### Conclusion

For the reasons stated, the petition for a writ of habeas corpus is dismissed and a certificate of probable cause is denied.

SO ORDERED.

---

**21.** In *Solem,* the Supreme Court stated that "objective criteria" are to be used to determine the proportionality of a sentence. These "objective criteria" include "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions." *Solem, supra,* 463 U.S. at 292, 103 S.Ct. at 3011. However, given the deference which must be accorded to the state, a reviewing court will rarely be required to undertake an extended analysis to determine that a sentence is not unconstitutionally disproportionate. *Solem, supra,* 463 U.S. at 290 n. 16, 103 S.Ct. at 3009–10 n. 16.

In *Harmelin v. Michigan,* 501 U.S. 957, 994–99, 111 S.Ct. 2680, 2701–04, 115 L.Ed.2d 836 (1991) (Kennedy, J.), affirming a life sentence without parole for a first-time felony offender convicted of possession of more than 650 grams of cocaine, the Supreme Court reiterated that the Eighth Amendment required only limited proportionality review of a non-capital sentence. (The Court split three-two-two, with Justice Scalia, with the concurrence of Chief Justice Rehnquist, propounding that proportionality is "an aspect of our death penalty jurisprudence, rather than a generalizable aspect of Eighth Amendment law." *Id.* at 994, 111 S.Ct. at 2701.)

**22.** *See, e.g., Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (mandatory life sentence imposed under Texas recidivist statute upon defendant's third felony conviction for obtaining $120.75 by false pretenses not violative of Eighth Amendment); *United States v. Ortiz,* 742 F.2d 712 (2d Cir.), *cert. denied,* 469 U.S. 1075, 105 S.Ct. 573, 83 L.Ed.2d 513 (1984) (sentence of ten years imprisonment and ten years special parole for selling $40 worth of heroin not cruel and unusual punishment in violation of the Eighth Amendment), *cert. denied,* 469 U.S. 1075, 105 S.Ct. 573, 83 L.Ed.2d 513 (1984).