**Donald D. NICHOLS, Petitioner,**

v.

**Walter KELLY, Superintendent Attica Correctional Facility, Defendant.**

**No. 95–CV–6033.**

United States District Court,
W.D. New York.

May 1, 1996.

Donald L. Nichols, Attica, NY, pro se.

Melvin Bressler, Harris and Chesworth, Rochester, NY, for respondent.

## DECISION AND ORDER

LARIMER, Chief Judge.

Petitioner, Donald L. Nichols, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Nichols is a prisoner at the Attica Correctional Facility ("Attica") where he is currently incarcerated for a 1988 murder and burglary conviction obtained in the Wayne County (New York) Court. For the reasons set forth below, his petition is dismissed.

### BACKGROUND

This case arises out of the March 1988 shooting death of Nichols' estranged wife, Exzelda Irene Nichols. At that time, Nichols and Mrs. Nichols had been married for nearly 40 years and had four adult children. The couple had been experiencing marital difficulties and, in early 1988, they separated. At that time, Mrs. Nichols went to live with her daughter in Palmyra.

The prosecution's version of the facts is as follows: On the evening of March 14, 1988, Nichols went to his daughter's Palmyra home with a recently purchased shotgun. Mrs. Nichols was alone at the house. Nichols cut the telephone wires and confronted his wife. A struggle ensued, during which Mrs. Nichols was shot and killed. Mrs. Nichols' partly naked body was discovered outside the house when her daughter arrived home later that evening.

Nichols left the Palmyra home immediately after the shooting and returned to his own home, which he set on fire.

Nichols then drove to a K–Mart store and attempted to purchase another gun, purportedly to kill himself. Because of the visible blood on his clothing, the K–Mart employee refused the sale.

Nichols then drove to Canada, where he remained at large for several days. Eventu-ally he telephoned one of his children. A number of telephone conversations took place during which his children urged him to return. These telephone conversations were taped at the request of the Wayne County Police and with the permission of Nichols' children. Nichols was informed during the latter telephone conversations that they were being taped and also that the first telephone conversation had been taped.

Nichols eventually agreed to return. Nichols' children, along with Wayne County police authorities, met him in Canada and escorted him to the border. After crossing into the United States Nichols was arrested.

On November 1, 1988, following a jury trial, Nichols was convicted of one count of Second Degree Murder (Penal Law § 125.25(1)); two counts of Second Degree Murder (Penal Law § 125.25(3)—"felony murder"); one count of First Degree Burglary (Penal Law § 140.30); and one count of Attempted First Degree Kidnapping (Penal Law § 135.25(3)), all arising out of the shooting death of Irene Nichols. Nichols was sentenced to 20 years to life on the three murder convictions, 5 to 15 years on the burglary conviction, and 6 to 18 years on the kidnapping conviction, all to run concurrently.

Nichols appealed his conviction to the New York Supreme Court Appellate Division, Fourth Department. The bases for his appeal were as follows: improper felony murder conviction based upon double jeopardy/multiplicity of indictment; failure to prove the crime of attempted kidnapping; unduly harsh/excessive sentence; and failure to suppress inadmissible evidence.

By Order dated November 16, 1990, the conviction was modified in part. The Appellate Division found that the crime of "attempted kidnapping in the 1st Degree" does not exist because:

> Kidnapping in the first degree under Penal Law § 135.25(3) is a strict liability crime with respect to the death caused, because it does not require an intent to bring about the death of the victim. * * * Consequently, there can be no attempt to commit that crime.

Accordingly, "defendant's convictions for attempted kidnapping in the first degree and felony murder where the underlying felony was attempted kidnapping must be reversed, and those counts of the indictment dismissed." *People v. Nichols,* 167 A.D.2d 925, 562 N.Y.S.2d 287 (4th Dep't 1990). The Appellate Division declined, however, to modify the sentence, "in the interest of justice." *Id.*

Nichols sought leave to appeal to the New York Court of Appeals, which request was denied on May 20, 1991. Petition Ex. 11.

On or about January 7, 1993, Nichols filed a motion to vacate judgment, pursuant to New York's Criminal Procedure Law ("CPL") § 440.10. The grounds asserted were as follows: prejudicial pretrial publicity; improper juror selection; ineffective trial counsel; and failure to exclude inadmissible evidence. Following briefing and a hearing in June 1993, this motion was denied pursuant to CPL § 440.10(2) and (3). Petition Ex. 10. Nichols appears to have sought leave to appeal this denial—Petition Ex. 12—and claims that the request was denied.

Finally, on or about October 4, 1993, Nichols filed an application for a writ of error coram nobis, on the grounds of ineffective appellate counsel. This writ was filed in the Appellate Division, Fourth Department. The writ was denied by Order dated December 10, 1993. Petition Ex. 12.

### NICHOLS' CLAIMS

In this proceeding before me, Nichols asserts the following grounds for a writ of habeas corpus: (1) double jeopardy; (2) multiplicious indictment; (3) improper jury selection; (4) failure to suppress inadmissible evidence; (5) prejudicial pretrial publicity; (6) biased judge; (7) ineffective trial counsel; and (8) ineffective appellate counsel.

 Generally, a state prisoner must exhaust available state court remedies before seeking federal habeas review. *See* 28 U.S.C. § 2254; *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). This requirement is based upon principles of federalism and comity, and gives state courts an initial opportunity to hear and correct alleged violations of its prisoners' federal rights.

*Solomon v. Senkowski,* 778 F.Supp. 197, 197–98 (S.D.N.Y.1991), *citing, Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971).

 Distinct from but related to a failure to exhaust state remedies is procedural default. This situation may arise when a question of federal law is decided by a state court on an adequate and independent state law ground. *See Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). When a petitioner has procedurally defaulted on a claim, federal habeas review is barred unless the petitioner can show cause for the default and resulting prejudice. *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2643–44, 91 L.Ed.2d 397 (1986); *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1575–76, 71 L.Ed.2d 783 (1982).

Nichols contends that he has exhausted all his state court remedies. The state concedes that "[p]etitioner apparently exhausted all state remedies." Answer at ¶ 5. Therefore, I will address each claim on the merits.

**A) *Claims Previously Raised On Nichols' Direct Appeal:***

**(i) *Double Jeopardy/Multiplicious Indictment***

 The gist of these claims is that Nichols was improperly convicted of multiple crimes (attempted 1st degree kidnapping and felony murder) based upon the same operative facts. Nichols alleges that these charges duplicate other charged crimes and should have been stricken from the indictment.

Both these claims were presented to the Appellate Division on direct appeal. In its decision modifying the judgment of conviction, the Fourth Department found that the claim of attempted 1st degree kidnapping did not exist and, therefore, both it and the felony murder charge based thereon were dismissed. "In the interest of justice," the Appellate Division declined to modify the sentence.

I find that the Appellate Division determination corrected any constitutional infirmity existing in the indictment or judgment of conviction. Nichols' ongoing complaints before me regarding double jeopardy and mul-

tiplicious indictment are therefore moot. These claims are meritless.

### ii) *Failure to Exclude Inadmissible Evidence*

■ Nichols asserts that the trial court violated federal law by admitting evidence of the tape-recorded telephone conversations that he had with his children. Specifically, Nichols asserts that this evidence was admitted in violation of his right to counsel as established by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Nichols also alleges that the evidence was admitted in violation of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq.*

On his direct appeal, Nichols also asserted that this evidence was illegally admitted. However, in that appeal, his arguments were based only on his rights under *Miranda v. Arizona.* Because Nichols' argument based upon the Omnibus Crime Control and Safe Streets Act was not raised on direct appeal, I am precluded from considering it now. As noted earlier, a district court cannot entertain a federal claim that has not been presented to the state court for its consideration.[1] *See Duncan v. Henry,* —— U.S. ——, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). I can, however, consider Nichols' claim that his right to counsel, under *Miranda v. Arizona,* was violated.

I find that this claim is meritless for the following reasons. At the time the telephone calls were made and tape-recorded, Nichols was at an unknown location in Canada. He was not in custody of any kind. He had not been arrested or detained by any law enforcement entity.

■ The right to counsel under the Sixth and Fourteenth Amendments of the United States Constitution attaches only after formal judicial proceedings have been initiated, and it attaches under the Fifth and Fourteenth Amendments only in custodial interrogations. *See United States v. Mast,* 735 F.2d 745, 749 n. 4 (2d Cir.1984) (no sixth amendment right to counsel where defendant merely the subject of investigation and no adversarial proceedings had begun); *United States v. Burke,* 700 F.2d 70, 84 (2d Cir.) ("custodial interrogation" occurs where the accused is "taken into custody or otherwise deprived of his freedom of action in any significant way"), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983). Neither condition existed when Nichols made these telephone calls. Thus, there was no violation of Nichols' right to counsel. This claim is meritless and must be dismissed.

### B) *Claims Previously Raised on Nichols' Section 440.10 Motion:*

### (i) *Prejudicial pretrial publicity; Improper juror selection; Ineffective trial counsel; Failure to exclude inadmissible evidence; Prejudiced trial judge*

Nichols asserted his claims of prejudicial pretrial publicity, improper juror selection, ineffective trial counsel, failure to exclude inadmissible evidence, and prejudiced trial judge in his Section 440.10 motion before the Wayne County Court.[2] The motion was denied based upon Section 440.10(2) and (3), which provisions include procedural impediments to bringing a Section 440.10 motion,— *i.e.,* failure to raise on direct appeal issues sufficiently reflected in the trial record (§ 440.10(2)(c)), and failure to preserve objection in trial record (§ 440.10(3)(a)). Petition Ex. 10. These statutory provisions constitute adequate and independent state grounds for the court's determination. Thus, absent a demonstration of cause and prejudice, the doctrine of procedural default bars me from considering these claims on a petition for writ of habeas corpus. *See Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (action procedurally barred from federal habeas corpus review

---

**1.** I note, however, that such claim is meritless. 18 U.S.C. § 2511(2)(c) states that "[i]t shall not be unlawful ... for a person acting under color of law to intercept a ... communication, where ... one of the parties to the communication has given prior consent to such interception." Because the telephone conversations at issue were taped with the permission of Nichols' children, no violation of the Omnibus Crime Control Act occurred.

**2.** Nichols' assertion that the trial judge was prejudiced appears in the text of his memorandum of law in support of his Section 440.10 motion.

when state court judgment was not based upon federal law or interwoven with federal law).

Nichols alleges that the reason for the procedural default was the incompetence of his appellate counsel. As set forth below (*see, infra,* at Section C), I find this claim meritless. Thus, Nichols has failed to demonstrate good cause for the procedural default and I am barred from considering any of those claims that were raised in the Nichols' Section 440.10 motion. *See Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

### C) *Ineffective Appellate Counsel:*

Nichols alleges that his appellate counsel failed to raise a number of issues on appeal, thus depriving him of numerous opportunities for reversal and also preventing him from asserting such claims collaterally in his Section 440.10 motion. Although Nichols' allegations are largely conclusory, he does assert specifically that his appellate counsel failed to raise certain issues suggested by him. I find this claim to be meritless.

■ An appellate attorney has no duty to raise each and every conceivable claim urged upon him by his client. In *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), the Supreme Court stated that defendants do not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to press those points." One of the tasks of appellate counsel, in fact, is "winnowing out weaker arguments on appeal and focusing on one central issue if possible." *Id.*

"This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986) (quoting *Jones, supra,* at 751–52, 103 S.Ct. at 3312–13). The fact

that some of these claims might have been colorable does not mean that they were required to have been made, for "[e]very nonfrivolous claim need not be urged if 'counsel, as a matter of professional judgment, decides not to present those points.'" *Abdurrahman v. Henderson,* 897 F.2d 71, 74 (2d Cir. 1990) (quoting *Jones, supra,* at 751, 103 S.Ct. at 3312–13).

My review of the claims which Nichols contends should have been raised on appeal (those raised in his Section 440.10 motion) leads me to conclude that they were at best weak, and in some instances, frivolous. Thus, I find that counsel's decision not to pursue these claims was a reasonable decision based on sound professional judgment. I discuss each below.[3]

■ **(i) Improper Jury Selection**—Nichols' claims of improper jury selection are conclusory and uncompelling. He alleges that the jury panel of 38 individuals was not a fair cross section of the community, thus violating his Sixth Amendment right to a fair trial. However, he fails to indicate specifically any bases for this assertion.

■ Contrary to Nichols' contentions, there is no constitutional right to have a jury panel made up of the entire population of registered voters. In order to establish a prima facie violation of the Sixth Amendment, a defendant must show that (1) the group claimed to be excluded [from the jury] is distinctive in the community, (2) the representation of the group in the jury pool is not fair and reasonable in relation to the number of members of the group in the community, and (3) the underrepresentation is the result of systematic exclusion of the group in the jury selection process. *Ricketts v. City of Hartford,* 74 F.3d 1397, 1407 (2d Cir.1996) (citing *United States v. Jackman,* 46 F.3d 1240 (2d Cir.1995)); *see also People v. Blake,* 170 A.D.2d 613, 566 N.Y.S.2d 387 (2d Dep't 1991). In this case, Nichols has failed to provide or even allude to any one of these factors. Thus, his conclusory claims that the pool did not constitute a "fair cross section"

---

**3.** Because an appellate attorney's failure to raise state law grounds for reversal or modification could result in a violation of appellant's United

States constitutional right to effective counsel, I must consider both federal and state law.

of the community are insufficient to establish a Sixth Amendment claim.

■ Nichols further alleges that he was improperly excluded from being present at a sidebar held during the jury selection process, in violation of both state and federal law. I find no violation of either.

New York's Criminal Procedure Law § 260.20 requires that a defendant be present "during the trial of an indictment." In 1992, the New York Court of Appeals extended this right to be present to certain side bar discussions conducted during *voir dire.* In *People v. Antommarchi,* 80 N.Y.2d 247, 590 N.Y.S.2d 33, 604 N.E.2d 95 (1992), the Court of Appeals held that it is a violation of New York's Criminal Procedure Law § 260.20 to exclude defendants from those side bars at which prospective jurors are questioned about their ability to weigh evidence objectively and hear testimony impartially. "Defendants are entitled to hear questions intended to search out a prospective juror's bias, hostility or predisposition to believe or discredit the testimony of potential witnesses and the venire person's answers so that they have the opportunity to assess the juror's facial expressions, demeanor and other subliminal responses ..." *Id.* at 250, 590 N.Y.S.2d 33, 604 N.E.2d 95. Thus, while a defendant may be excluded from side bars where juror qualifications such a physical impairments, family obligations and work commitments are discussed, a defendant may not be excluded from a side bar during which the juror's background and ability to weigh evidence are discussed. *Id.*

In *People v. Mitchell,* 80 N.Y.2d 519, 591 N.Y.S.2d 990, 606 N.E.2d 1381 (1992), the Court of Appeals determined that *Antommarchi* applies prospectively only. Thus, the rule against side bar exclusion applies "only to those cases in which jury selection occurred after October 27, 1992."

In this case, the jury was impaneled in 1988, long before *Antommarchi* was decided. Thus, the *Antommarchi* rule against side bar exclusion during *voir dire* was not applicable.

Moreover, Nichols has not shown that the side bar from which he was allegedly excluded involved matters subject to the *Antommarchi* rule. Thus, even if *Antommarchi* applied, Nichols' conclusory allegations concerning his exclusion are insufficient to establish a violation of New York statutory law.

■ As for any alleged violation of federal law, Nichols' allegations fail in this regard too. Federal standards regarding a defendant's presence at a side bars are less stringent than New York's standards. Nichols' presence at each sidebar held during jury selection was not required by the United States Constitution. *See Gaiter v. Lord,* 917 F.Supp. 145 (E.D.N.Y.1996) ("The Federal Constitution does not require a defendant's presence at sidebar conferences").

Finally, while Nichols alleges that the trial court improperly disallowed defendant's attempt to exclude for cause juror # 8, the *voir dire* transcript demonstrates that this juror specifically stated that, if chosen, she would base her decision only on the evidence that was presented in court—not in the newspapers. Petition Ex. 8. Thus, it does not appear that any failure to exclude was improper.[4]

**(ii) Prejudicial Pretrial Publicity—**Nichols' assertions are conclusory and baseless. He presents no specific evidence whatsoever that any juror was unable to decide the case based upon the facts presented in court, as opposed to what he or she read in the newspaper.

**(iii) Ineffective Trial Counsel—**Nichols' claims of ineffective trial counsel are largely conclusory, but Nichols does allege with some specificity that trial counsel failed to do the following:

—He failed to object to admission of the telephone calls;

—He failed to object to the composition of the jury panel;

No additional pages of the transcript were provided. Thus, I cannot determine whether or not juror # 8 was excluded.

---

4. It is not entirely clear from the record submitted by Nichols that juror # 8 was not excluded. Following the judge's request for peremptory challenges, counsel for defendant stated "eight."

—He failed to ensure that his client was present during all parts of the jury selection process (including side bars);

—He failed to investigate Nichols' medical condition and use of drugs;

—He failed to suppress evidence about the handling of the gun recovered in Nichols' burned down home.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-part test that a habeas corpus petitioner must satisfy in order to demonstrate that he was denied the "reasonably effective assistance of counsel" guaranteed by the Sixth Amendment. First, Nichols must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland, supra,* at 688, 104 S.Ct. at 2064; *Abdurrahman v. Henderson,* 897 F.2d 71 (2d Cir.1990). Second, he must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra,* at 694, 104 S.Ct. at 2068.

After reviewing the record in this case, I conclude that Nichols' contentions are without merit. The record reveals that trial counsel vigorously defended Nichols and that the alleged errors complained of were based on legitimate considerations of trial strategy and would not have changed the outcome of the case.

**(iv) Failure to Exclude Inadmissible Evidence**—This claim was raised by appellate counsel on direct appeal and I have addressed it, *supra,* at Section A.

**(v) Prejudiced Judge**—This claim appears to be based upon the trial judge's evidentiary rulings, most of which constitute the bases for the other claims raised by Nichols herein. After reviewing the trial transcript I find nothing to support any contention improper judicial motive.

■ Accordingly, none of the claims raised by Nichols in his Section 440.10 motion likely would have succeeded if raised on direct appeal. Thus, I cannot find that appellate counsel's failure to raise them, constituted a constitutional error.

Nichols' appellate counsel successfully obtained a modification of Nichols' conviction. Clearly, he carefully considered his strategy and focused on arguments that he considered to be strong ones. The action of the Appellate Division (modifying the conviction) demonstrates that they were. Thus, I find that Nichols' claim of ineffective appellate counsel is meritless.

### *CONCLUSION*

For all of the reasons set forth above, the petition of Donald L. Nichols, for habeas corpus relief is dismissed.

For the reasons set forth above and because the issues raised in the petition in my view are not the type that a court could resolve in a different manner and because I do not believe that the issues are debatable among jurists of reason, I conclude that this petition presents no federal question of substance worthy of attention from the Court of Appeals and, therefore, pursuant to 28 U.S.C. § 2253 and Fed.R.App.P. 22(b) I hereby deny a certificate of probable cause. Petitioner must file any Notice of Appeal with this Court within thirty (30) days of the date of entry of this judgment.

IT IS SO ORDERED.