Luis **WILLIAMS**, Petitioner,

v.

Joseph **McCOY**, Superintendent, Cayuga Correctional Facility, Respondent.

**No. 95 CV 5098.**

United States District Court, E.D. New York.

June 3, 1998.

Luis Williams, pro se.

Denis Dillon, Dist. Atty., Nassau County, Mineola, NY (John F. McGlynn, Asst. Dist. Atty., Nassau County, of counsel), for Joseph McCoy.

## OPINION AND ORDER

GERSHON, District Judge.

In this *pro se* petition for a writ of habeas corpus brought under 28 U.S.C. § 2254, petitioner Luis Williams challenges his November 28, 1989 conviction, after a jury trial in New York State Supreme Court, Nassau County (Harrington, J.). Petitioner was convicted of rape and sentenced to an indeterminate prison term of five to fifteen years.

On direct appeal, the Appellate Division unanimously affirmed the conviction, holding that the evidence was legally sufficient to establish petitioner's guilt beyond a reasonable doubt; that the verdict was not against the weight of the evidence; that it was not error for the trial judge to admit evidence that the complainant was suffering from chlamydia; and that petitioner's remaining claims were either unpreserved for appellate review or without merit. *People v. Williams,* 176 A.D.2d 371, 574 N.Y.S.2d 787 (2d Dep't 1991). Leave to appeal was denied in January 1992. *People v. Williams,* 79 N.Y.2d 866, 580 N.Y.S.2d 738, 588 N.E.2d 773 (1992).

In August 1994, petitioner moved to vacate his sentence pursuant to New York Criminal Procedure Law § 440.10, arguing that he was barred from an important sidebar conference in violation of his right to be present at all material stages of his trial. Petitioner's motion was denied on November 10, 1994. Leave to appeal also was denied. Petitioner's second motion to vacate on the ground that he had been deprived of effective

assistance of counsel was denied on July 20, 1995.

Petitioner then filed this petition for a writ of habeas corpus in which he asserts the following claims: (1) the evidence did not establish his guilt beyond a reasonable doubt; (2) the trial judge erred in excluding evidence that would have established the complainant's motive to fabricate; (3) the trial judge erred in admitting evidence that the complainant was suffering from chlamydia and that her behavior changed following the alleged rape; (4) the trial judge misinstructed the jury on evaluating witness credibility and on the elements of rape, and erred in denying petitioner's request for a missing witness instruction; (5) defense counsel was ineffective; and (6) petitioner was unconstitutionally barred from a *Sandoval* hearing.

## I. EVIDENCE AT TRIAL

The prosecution presented evidence at trial that petitioner raped and sexually abused Yuisa Santiago, his ex-girlfriend's nine-year-old daughter.

Santiago testified that in November 1988, petitioner came to her room while she was watching television, pushed her gown up, and started touching her breasts. On December 22, 1988, petitioner again entered Santiago's room, this time while she was sleeping. He pulled her gown up and lowered her sweat pants and shorts to her knees, then stood by the television, lowered his shorts, and rubbed his penis until "some gooey stuff" came out. Santiago further stated that petitioner rubbed the "gooey stuff" onto his stomach, then knelt over her and began to rub her breasts. He put his penis in her vagina and "started going in circles" until she felt "some gooey stuff" in her vagina. Before leaving, petitioner told Santiago that he would kill her baby brother if she told her mother what had happened.

Marina Cortez, Santiago's mother and petitioner's former girlfriend, testified that on January 30, 1989, Santiago came to her crying and told her that petitioner had raped her. Cortez telephoned Santiago's natural father, who took Santiago to her aunt's home in the Bronx. On February 9, 1989, Cortez brought Santiago to North Central Bronx Hospital where she was examined by the hospital's child protective unit.

Cortez further testified that she and petitioner had separated in December 1988, at which time she and Santiago had returned to the Bronx. When Cortez and petitioner reconciled on January 1, 1989, Santiago did not want to return to Uniondale. In January 1989, Cortez noticed that Santiago cried a lot and stayed in her room whenever petitioner was in the house. Cortez also explained that once, while she was doing laundry, she noticed that Santiago's underwear was stained with discharge and blood. Santiago periodically complained that her stomach hurt, and occasionally called Cortez to the bathroom, where she noticed that Santiago was bleeding.

Lauren Kramer, a pediatric nurse at North Central, testified that when she examined Santiago on February 9, 1989, her hymenal opening was seven to eight millimeters in diameter, which was within normal limits for a child of her age, but that Santiago had abnormal vaginal discharge. Kramer further stated that Santiago was an "essentially well child" and that the vaginal and rectal exam were "essentially normal without sign of sexual abuse."

Dr. Linda Cahill, Director of Child Protective Services at North Central, examined Santiago on February 24, 1989, after Santiago had tested positive for chlamydia during her first exam. Cahill testified that Santiago had clear vaginal discharge and mild redness around the hymen, and that these findings were consistent with the diagnosis of chlamydia. The remainder of the examination was normal. Cahill explained that penile penetration in a child's vagina does not always cause tearing in the hymenal area and that chlamydia in a child is "virtually diagnostic of sexual abuse."

Cahill further testified that Santiago told her that petitioner had come to her room in November, covered her mouth with his hands, and touched her breasts. He put his fingers in her vagina and rubbed his penis until "yellow-white sticky stuff" came out, then rubbed her vagina again. The episode lasted fifteen minutes and then petitioner

went through Santiago's things for an hour and a half. Cahill asked Santiago if she had been raped and Santiago said "no." Cahill concluded that the diagnosis of chlamydia was "consistent with a history having been touched by someone contaminated with semen on his hand."

In an effort to establish inconsistencies in Santiago's testimony, defense counsel called as witnesses two Nassau County Police Department detectives who had interviewed Santiago in February 1989. Detective Walleen Jones testified that Santiago told her she had been raped the day before she left Uniondale for the Bronx in December 1988. Jones further testified that, in her experience, two or three statements must be taken before a child who has been sexually abused tells the full story and, in some cases, a child never discloses the full details of a sexual attack. Detective Thomas Brennan testified that Santiago told him that on December 23, 1998, she was asleep in her room when a noise in the hallway woke her up. She fell back to sleep and, when she woke up for the second time, petitioner was touching her breasts. Petitioner put both hands in her underpants and rubbed her vagina, then touched her breasts again before leaving the room. Petitioner told Santiago twice that he would kill her brother if she told her mother. Santiago did not tell Brennan that she had been raped.

Petitioner, who testified in his own defense, denied raping or sexually abusing Santiago and claimed that he had never gone to Santiago's room at night. He also testified that on December 22, 1998, the date of the alleged rape, Santiago and her mother had already left Uniondale for the Bronx.

Petitioner further explained that he had a good relationship with Santiago while they lived in the Bronx, but that Santiago was "bored" when they moved to Uniondale in October 1988, and was "fresh" with him and Cortez. Santiago wanted to return to the Bronx and once said to him, "Well, I am tired of you telling me what to do. You are not my father." Petitioner further stated that Santiago's natural father often called Cortez in Uniondale, and that he and Cortez argued about the calls.

Petitioner explained that Cortez and Santiago had returned to the Bronx temporarily on November 15, 1998, so that Cortez could be close to the hospital where she was going to give birth. They returned to Uniondale in late November or early December after Luis, Jr. was born, then left again in late December when he and Cortez separated. When Petitioner and Cortez reconciled on January 1, 1989, and Cortez and Santiago returned to Uniondale, Santiago was irritated, rude and fresh with petitioner.

Finally petitioner testified that, following Luis, Jr.'s birth, Cortez slept in the living room with the baby while he slept in the first-floor bedroom. Petitioner explained that to walk from his room to Santiago's, he would have had to use the stairs in the living room where Cortez slept.

In his closing argument, defense counsel highlighted the inconsistencies in Santiago's testimony and argued that Santiago's lack of emotion on the witness stand belied her claims. He further argued that the variance between the early and late February medical examinations, an interval during which petitioner had no contact with Santiago, proved that Santiago was abused by someone else.

The prosecutor argued that the inconsistencies in Santiago's testimony were explained by Santiago's fear and embarrassment upon having to describe the abuse to several people on several different occasions. She pointed out that Santiago had never wavered from her identification of petitioner as the culprit and that there was no evidence to suggest that anyone other than petitioner had raped Santiago.

## II. DISCUSSION

### A. *Ineffective Assistance of Counsel*

Petitioner first raised an ineffective assistance of counsel claim in his second motion to vacate the conviction. The state court denied petitioner's motion based on his failure to raise the issue on direct appeal.

The court also held that petitioner's claim lacked merit. The court found that counsel's decision not to call a medical expert was a strategic decision, and that his failure to

object to Kramer's unsolicited remark about the recovery of young children who had been raped was harmless since counsel properly asked the witness to limit her responses to the questions. The court also found that counsel had, in fact, requested a missing witness instruction and that petitioner's claim for failure to investigate was unsubstantiated. Finally, the court held that counsel's failure to object to the trial judge's rape instruction was not unduly prejudicial because the charge, itself, was proper.

■ This court is barred from reviewing petitioner's ineffective assistance of counsel claim. When a state court makes a "plain statement" that it is relying on a state procedural rule to decide a claim, there exists an independent and adequate state ground to sustain the conviction, and review of the claim by a federal court is barred absent a showing of cause and prejudice. *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Petitioner has not established cause or prejudice for his failure to raise the ineffective assistance of counsel claim on direct appeal. The state court's alternative holding that petitioner's ineffective assistance of counsel claim lacks merit is of no consequence because the court explicitly invoked procedural bar as a separate basis for its decision. *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990).

### B. *Improper Admission of Evidence*

Petitioner argues that the introduction of evidence that Santiago had chlamydia, coupled with Cortez's comments about the changes in Santiago's behavior upon her return to Uniondale, was so highly prejudicial as to deprive him of his right to a fair trial.

■ The federal habeas corpus statute, 28 U.S.C. § 2254, requires that a state prisoner seeking federal habeas review of a conviction first exhaust all available state remedies. To fulfill the exhaustion requirement, a petitioner must have "fairly presented" a federal claim to the highest state court from which a decision can be had. *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v. Attorney General of State of New York,* 696 F.2d 186, 190 n. 3 (2d Cir.1982), *cert. denied,* 464 U.S. 1048, 104

S.Ct. 723, 79 L.Ed.2d 184 (1984). A petitioner must set forth in the appropriate state court all of the essential factual allegations and substantially the same legal doctrines asserted in the federal petition, *Daye,* 696 F.2d at 191–92, and must seek available appellate review of the denial of the claim. *Id.* at 190, n. 3. Principles of comity mandate that the petitioner also put the state court on notice that he or she is asserting a federal claim. *Petrucelli v. Coombe,* 735 F.2d 684, 687–88 (2d Cir.1984).

■ Petitioner failed to present his claims in constitutional terms to the state courts. His appellate brief challenged the evidentiary rulings on state law grounds, citing New York cases that discuss *only* New York law. On direct appeal, petitioner argued that he was deprived of a fair trial, but such a claim is insufficient to present a federal constitutional claim. *See Kirksey v. Jones,* 673 F.2d 58, 60 (2d Cir.1982) ("Alleging lack of a fair trial does not convert every complaint about evidence or a prosecutor's summation into a federal due process claim."). However, because petitioner no longer has a state forum in which to argue the claim, technically the claim is exhausted. *See Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Nonetheless, I am barred by the doctrine of procedural default from reviewing petitioner's claim. Where a petitioner has failed to present his or her federal claims to the state courts in accordance with state procedural requirements, the claims will be subject to procedural bar in this court. *See Bossett v. Walker,* 41 F.3d 825, 828–29 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995); *Coleman,* 501 U.S. If there is such a procedural bar, the claim cannot be heard absent a showing of cause for the procedural default and prejudice. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Washington v. James,* 996 F.2d 1442 (2d Cir.1993), *cert. denied,* 510 U.S. 1078, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994). Since petitioner has not established cause for the default, nor has he explained how a fundamental miscarriage of justice would result from a denial of his

request for review, his claim is procedurally barred.

### C. *Sandoval Hearing*

■ Petitioner also contends that the trial judge impermissibly barred him from a *Sandoval* hearing. A *Sandoval* hearing is held, upon a defendant's request, to determine the extent to which he will be subject to impeachment by cross-examination about prior bad acts if he testifies. *People v. Dokes*, 79 N.Y.2d 656, 660, 584 N.Y.S.2d 761, 595 N.E.2d 836 (1992). Though a defendant has an absolute right under New York law to be present at a *Sandoval* hearing, *see id.*, that right does not derive from federal constitutional principles. *See People v. Favor*, 82 N.Y.2d 254, 262, 604 N.Y.S.2d 494, 624 N.E.2d 631 (1993). And, it is well established that federal courts reviewing habeas corpus petitions may only overturn convictions obtained in violation of the federal Constitution. *See Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

In any event, the "hearing" petitioner refers to was not a *Sandoval* hearing. It was simply a sidebar conference midway through the prosecutor's cross-examination of petitioner to address the legal question whether petitioner had opened the door on direct examination to questions regarding a prior arrest. Petitioner has not established a federal constitutional right to be present for such a conference.

### D. *Jury Charges*

Petitioner contends that the trial judge erred in charging the jury because (1) he did not give a missing witness instruction; (2) he neglected to inform the jury that rape requires penile penetration; and (3) he did not define the term "material fact" in conjunction with the instruction on witness credibility.[1]

■ "Whether a missing witness charge should be given lies in the sound discretion of the trial court." *Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir.1992) (citation omitted). Petitioner requested a missing witness instruction because the prosecution did not call the arresting officer, Santiago's father, or Santiago's aunts to the stand. The trial judge denied petitioner's request, stating that "[t]here is no indication that any of them had any probative evidence to offer on the material issues in this trial, namely, whether or not this defendant had intercourse with the victim."

Petitioner maintains that the missing witnesses would have aided the jury in determining Santiago's credibility and state of mind, as well as Santiago's location on relevant dates. However, Santiago testified on cross-examination that she never discussed the rape with her father, and petitioner points to no evidence to suggest otherwise. Petitioner also points to no evidence suggesting that Santiago discussed the incident with her aunts. The only evidence that the record suggests any of the "missing witnesses" might have been able to provide is that the aunts may have had knowledge of the dates on which Santiago was in the Bronx, about which Santiago herself had testified.

Petitioner has not shown that the missing witness instruction was constitutionally required. "[A] missing witness instruction is merely a more formal articulation of an inference which a jury may draw or not draw on the basis of their ordinary experience." *Green v. Scully*, 840 F.Supp. 254, 256 (S.D.N.Y.1993). Though defense counsel chose not to comment upon the absence of the missing witnesses in his summation, the trial judge did not bar him from doing so. In fact, defense counsel did not request a missing witness instruction and the judge did not deny this request until after counsel had completed his summation. Under the facts of this case, the trial court clearly acted within its discretion in denying the requested instruction.

■ Petitioner also argues that the trial judge erred in instructing the jury on the elements of rape because he neglected to explain that rape requires penile—as opposed to digital—penetration. The court instructed the jury that a "male is guilty of

---

1. Defense counsel failed to object to these charges at trial. However, since petitioner raised his objections on direct appeal, and the Appellate Division affirmed the conviction with- out stating whether the objections were procedurally barred, petitioner has cleared the hurdle of procedural default.

rape in the first degree when he engages in sexual intercourse with a female who is less than eleven years old" and that "sexual intercourse" has "its ordinary meaning and occurs upon any penetration, however slight." A jury of competent adults surely understood the "ordinary meaning" of "sexual intercourse" to require penile penetration. Moreover, the prosecutor distinguished between the charges of rape and sexual abuse on closing argument. Since the instruction was sufficiently clear in defining rape, it cannot be said to have resulted in a violation of petitioner's constitutional rights.

Finally, petitioner asserts that the court failed to define "material fact" when it instructed the jury that, "[i]f you do find that any witness has willfully testified falsely as to any material fact or issue, you are at liberty to disregard all or any part of that witness's testimony." Petitioner contends that this instruction permitted the jury to discredit witnesses who had testified falsely, even to inconsequential matters, thereby permitting the jury to convict petitioner absent proof beyond a reasonable doubt.

 A jury instruction is erroneous if it "misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Anderson v. Branen,* 17 F.3d 552, 556 (2d Cir.1994). The particular passage petitioner objects to was part of a five-page instruction on evaluating witness testimony. Following the above statement, the judge instructed the jury that they were the sole judges of fact, and that they "may believe what you believe what you please or you may disbelieve what you please of the testimony of any witness. You may accept or refuse to accept the testimony of any witness in whole or in part. It is entirely discretionary with you." When reviewed in its entirety, there is no indication that this instruction misinformed the jury of the correct legal standard by which to evaluate the evidence.

### E. *Sufficiency of the Evidence*

 District courts are not empowered to review the evidence presented to a jury *de novo.* Petitioner's claim that the evidence was insufficient to support a convic-

tion depends on whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Wright v. West,* 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* at 296–97, 112 S.Ct. 2482.

 Petitioner argues that the evidence against him was insufficient to support a conviction because Santiago's trial testimony was inconsistent with her previous statements to the police and to medical personnel. Petitioner's contention is without merit. Notwithstanding the discrepancies in Santiago's testimony, it is up to the jury to determine the credibility of a witness, and the court must defer to the jury's decision to believe or disbelieve a witness's testimony. *See id.; United States v. Khan,* 53 F.3d 507, 514 (2d Cir.1995), *cert. denied,* 516 U.S. 1042, 116 S.Ct. 697–98, 133 L.Ed.2d 655 (1996) ("the credibility of witnesses is the province of the jury and we simply cannot replace the jury's credibility determination with our own."). The members of the jury were aware of the inconsistencies in Santiago's testimony, and they believed her nonetheless.

 Petitioner also observes that there was no medical evidence of penile penetration nor was there any proof that Santiago had contracted chlamydia from him. He further alleges bias in the testing because Santiago's aunt worked in the office in which the chlamydia test was conducted. Even assuming petitioner's observations are correct, they do not establish that the evidence was constitutionally deficient. Santiago testified that, on December 22, 1988, when she was nine years old, petitioner entered her room, undressed her, and put his penis in her vagina, threatening to kill her baby brother if she told her mother what happened. This testimony was sufficient to convince a ration-

al trier of fact that Santiago had been raped beyond a reasonable doubt.

## F. *Exclusion of the Evidence*

Petitioner asserts that the trial judge erred in: (1) prohibiting defense counsel from cross-examining Santiago about previous, allegedly false claims that she had been attacked on a beach and that someone had tried to break into her house; (2) preventing defendant from testifying about his problems with Cortez arising out of repeated calls from Santiago's natural father, and about Santiago's changed behavior following her return from the Bronx; (3) excluding Cortez's medical records; and (4) excluding evidence that petitioner's underwear had been seized upon his arrest. Petitioner argues that the judge's erroneous evidentiary rulings deprived him of the opportunity to explore and develop Santiago's "motive to fabricate."

■■■ Erroneous evidentiary rulings do not necessarily rise to the level of constitutional error. "The court's duty on a petition for habeas corpus is to determine whether the excluded testimony was material to the presentation of the defense so as to deprive the petitioner of fundamental fairness. The court must determine whether the exclusion was an error of constitutional dimension, and whether that constitutional error was harmless beyond a reasonable doubt." *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir.1988) (citation omitted). Whether the exclusion of evidence violated petitioner's right to present a defense depends upon whether "the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist." *Justice v. Hoke*, 90 F.3d 43, 47 (2d Cir.1996) (citation and quotation omitted).

■■■ Here, the trial testimony of Santiago, the victim and principal witness, was inconsistent at points with her previous statements to the police and to medical personnel. Thus, competent evidence establishing that Santiago had a motive to fabricate may have created a reasonable doubt. Petitioner has failed to demonstrate, however, how any of the evidence excluded by the trial judge was material to his defense.

Cortez's medical records and petitioner's testimony that the police had seized his underwear were properly excluded as irrelevant. The judge permitted defense counsel to make an offer of proof regarding the relevance of the underwear, and defense counsel was unable to establish any connection between the seizure of the underwear and his theory of defense.

■■■ Insofar as the hospital records are concerned, defense counsel's theory was that, had petitioner infected Santiago with chlamydia, he also would have infected Cortez. Defense counsel sought to introduce Cortez's records in order to establish that petitioner had never infected Cortez. However, as the trial judge correctly noted, there was no indication in Cortez's records that she had been tested for chlamydia. Since Dr. Cahill testified that it is not uncommon for the disease to be asymptomatic, the mere fact that no symptoms were noted in Cortez's hospital records was not sufficient to establish that Cortez had not been infected, and it was entirely proper for the judge to exclude the records from evidence.

■■■ It also was proper for the trial judge to prohibit defense counsel from cross-examining Santiago about her previous, allegedly false claims that she had been attacked on the beach and that someone had tried to break into her house. Questions concerning the general credibility of a witness—as opposed to specific questions regarding a possible reason for fabrication—are considered collateral, and trial judges have broad discretion to curtail exploration of collateral matters.

■■■ Petitioner's testimony regarding the substance of his arguments with Cortez over Santiago's father's phone calls may have been relevant in establishing Santiago's resentment toward petitioner for creating a rift between her parents and for separating her from her father and friends in the Bronx. Nonetheless, defense counsel successfully established, through petitioner and Cortez, that Santiago was upset about moving to Uniondale. Similarly, although the trial judge barred petitioner from testifying about the changes in Santiago's behavior upon her re-

turn from the Bronx after the baby was born, petitioner was permitted to testify about Santiago's boredom when the family first moved to Uniondale in October, and about Santiago's anger and frustration upon returning to Uniondale in January, thus allowing defense counsel to suggest an inference that petitioner may have been abused by someone in the Bronx. Based upon the entirety of the record, the trial judge's rulings did not bar petitioner from making his defense, and any individual errors—if any there were—were not of constitutional dimension.

## III. CONCLUSION

For the above-state reasons, the petition for a writ of habeas corpus is denied.

**SO ORDERED.**