**Peter WILSON, Petitioner,**

v.

**Floyd G. BENNETT, Superintendent, Elmira Correctional Facility, Respondent.**

**No. 99 CIV. 4194(LAP) (GWG).**

United States District Court,
S.D. New York.

Feb. 5, 2002.

---

Mr. Peter Wilson, Upstate Correctional Facility, Malone.

Peter A. Sell, Esq., Assistant District Attorney, Bronx County District Attorney's Office, Bronx.

## ORDER ADOPTING REPORT AND RECOMMENDATION

PRESKA, District Judge.

Petitioner filed a petition for a writ of habeas corpus on June 11, 1999. The matter was initially referred to Magistrate Judge Douglas F. Eaton but was redesignated to Magistrate Judge Gabriel W. Gorenstein on March 15, 2001. Magistrate Judge Gorenstein issued a Report and Recommendation on November 26, 2001 (the "Report"), in which he recommends that the petition for a writ of habeas corpus should be dismissed. The parties were given ten days to file any objections.

Having received no objections to Judge Gorenstein's November 26, 2001 Report and finding the Report to be well-reasoned and thoroughly grounded in the law, it is hereby

Ordered that the Report is adopted in its entirety and petitioner's petition is dismissed.

The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED

## REPORT AND RECOMMENDATION

GORENSTEIN, United States Magistrate Judge.

This case is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner, Peter Wilson, is currently an inmate at Upstate Correctional Facility in Malone, New York.

## I. PROCEDURAL HISTORY

### A. Evidence at Trial

The pertinent evidence at trial was as follows:

On October 15, 1992, at about 10:15 p.m. near 3436 Corsa Avenue in the Bronx, Glendolyn Foster was sitting on the hood of a parked car with Mervin Brown. (Foster: Tr.[1] 62–64, 111–112, Lopez: Tr. 221–22, 237–38). At approximately 10:30 p.m., Foster observed Peter Wilson, the defendant, walking towards them, along Corsa Avenue, from Hicks Street. Wilson had a seven-inch automatic handgun in his waistband. (Foster: Tr. 64–65, 84–88, 139). As he approached, Wilson pulled out the gun and pointed it at Brown. (Foster: Tr. 87). Foster heard Wilson say to Brown, "Where's my money," to which Brown responded, "Put the gun down and I'll talk to you." (Foster: Tr. 88, 90, 126, 145). As Wilson came closer, Foster ultimately crouched down next to the car that was parked in front of the one that she and Brown had been sitting on (Foster: Tr. 89–91, 126–27) and heard four shots, although she did not see the shooting. (Foster: Tr. 90–91, 123, 132).

Alvin Lopez was walking along Corsa towards Boston Post Road when he saw Peter Wilson holding a gun and arguing with Brown. (Lopez: Tr. 222–23, 246, 250–51). Lopez heard Wilson ask Brown

---

1. "Tr." refers to the transcript of the trial in *People v. Wilson,* Indictment No. 7592/92, Supreme Court, Bronx County. "S. Tr." refers to the transcript of the sentencing.

where his money was and heard Brown tell Wilson to put the gun down and that he would pay Wilson. (Lopez: Tr. 223–24). Lopez then backed up close to a parked van and stood approximately twenty feet away, from which vantage point he saw Wilson fire the gun two or three times, shooting Brown. (Lopez: Tr. 224–27, 233, 254–55). When Brown was shot, he was holding up both of his hands at shoulder level, with palms out. (Lopez: Tr. 227). Another eyewitness, Charles Wilson, also saw the defendant Peter Wilson arguing with Brown and then saw him pull out a gun and fire it at Brown. (C. Wilson: Tr. 322–23, 324–27). After the shooting, Peter Wilson ran away from the scene. (Lopez: Tr. 226). Brown later died at the hospital; the cause of death was one gunshot wound to the abdomen, resulting in injuries to the liver, mesenteric blood vessels, aorta, and intestines. (Milewski: Tr. 166–67).

The only witness for the defense was Fay Buchanan, Wilson's mother, who testified she had called home several times on the evening of October 15, 1992. On direct examination, she testified she called home at approximately 8:00 or 8:15 p.m., 9:15 p.m., and 10:00 or 10:15 p.m. and spoke to Wilson each time (Buchanan: Tr. 398–400), though she was not as clear about these times during cross-examination. (Buchanan: Tr. 415–21).

On March 30, 1995, Wilson was convicted of Murder in the Second Degree under New York Penal Law § 125.25(1), and Manslaughter in the First Degree under New York Penal Law § 125.20. He was sentenced to concurrent terms of 25 years to life and 8-1/3 to 25 years respectively. (S. Tr. 17–18).

### B. *Direct State Court Appeals*

Represented by counsel, Wilson appealed to the Appellate Division, First Department. *See* Brief for Defendant–Appellant to the Appellate Division, First Department, dated January 28, 1997 (reproduced as Exhibit 1 to Respondent's Affidavit in Opposition, dated May 18, 2001) (hereinafter, "Brief for Defendant–Appellant"). His brief alleged one ground for appeal: that the trial court denied Wilson his right to be present at two side-bar conferences during which the parties discussed whether defense counsel would be allowed to cross-examine two prosecution witnesses regarding their knowledge of a prior shooting involving Wilson. *See* Brief for Defendant–Appellant at 13–19.

The Appellate Division affirmed the judgment of conviction on July 3, 1997. *See People v. Wilson,* 241 A.D.2d 346, 346, 660 N.Y.S.2d 977 (1st Dep't 1997). With respect to Wilson's ground for appeal, the Appellate Division stated:

> The court properly denied defendant's request to be present at sidebar discussions regarding the scope of cross-examination, since they concerned only matters of law (see, *People v. Rodriguez,* 85 N.Y.2d 586, 591, 627 N.Y.S.2d 292, 650 N.E.2d 1293), and there existed no "potential for [defendant's] meaningful participation" (*supra,* at 591, 627 N.Y.S.2d 292, 650 N.E.2d 1293). These discussions did not involve "factual matters about which defendant might have peculiar knowledge that would be useful in advancing the defendant's or countering the People's position." (*People v. Dokes,* 79 N.Y.2d 656, 660, 584 N.Y.S.2d 761, 595 N.E.2d 836).

*People v. Wilson,* 241 A.D.2d at 346–47, 660 N.Y.S.2d 977.

Represented by counsel, Wilson sought leave to appeal to the New York Court of Appeals by letter dated July 14, 1997. *See* Letter from Carol Santangelo to Chief Judge Judith Kaye of the New York State Court of Appeals, dated July 14, 1997 (reproduced as Exhibit 3 to Respondent's Af-

fidavit in Opposition, dated May 18, 2001). In this application, Wilson attached the same brief submitted to the First Department and asked the court to "consider and review all issues raised in the enclosed brief for Defendant–Appellant." *Id.* On December 1, 1997, the New York Court of Appeals denied leave to appeal. *See People v. Wilson,* 91 N.Y.2d 883, 668 N.Y.S.2d 581, 691 N.E.2d 653 (1997). Wilson did not seek a writ of certiorari from the United States Supreme Court. He also did not mount a collateral attack on his conviction in State Court.

### C. *Wilson's Federal Habeas Corpus Petition*

While Wilson's present petition for writ of habeas corpus (hereinafter "Habeas Petition") is dated March 1, 1999, *see* Habeas Petition at 7, his attached affidavit of service indicates that it was not mailed to the Court until March 16, 1999. A "received" stamp indicates that the document arrived at the Court's *Pro Se* Office on March 26, 1999. Wilson's petition presents the same claim that was raised in the state court appeal: that Wilson was denied his right to be present during the sidebars at his trial. *See* Habeas Petition, ¶ A.

On June 11, 1999, Chief District Judge Thomas P. Greisa ordered Wilson to show cause why the statute of limitations under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244, should not bar review of the habeas petition. Wilson submitted an affirmation to the court on August 12, 1999. The petition was referred to the undersigned for a Report and Recommendation on March 15, 2001.

The respondent has raised two defenses to the petition: (1) that it is barred by the statute of limitations under the AEDPA; and (2) that it should be denied on the merits. Each is discussed in turn.

### II. *STATUTE OF LIMITATIONS*

■ Habeas corpus relief under 28 U.S.C. § 2254 is available to a petitioner in state custody in violation of the Constitution or a federal law or treaty. *See* 28 U.S.C. § 2254(a). The AEDPA provides a one-year statute of limitations for filing a petition for writ of habeas corpus. It states in pertinent part:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

28 U.S.C. § 2244(d)(1). Where direct state court review has been concluded, the conviction is considered to be "final" upon the expiration of time to seek direct review in the United States Supreme Court by writ of certiorari, which is ninety days after entry of the judgment of conviction or of the order denying discretionary review. *See Williams v. Artuz,* 237 F.3d 147, 151 (2d Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 279, 151 L.Ed.2d 205 (2001); *Acosta v. Artuz,* 221 F.3d 117, 120 (2d Cir.2000); *Smith v. McGinnis,* 208 F.3d 13, 14 n. 1 (2d Cir.), *cert. denied,* 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000).

■ Wilson was denied leave to appeal to the New York State Court of Appeals on December 1, 1998, so his time to seek review from the United States Supreme Court expired ninety days later, on March 1, 1998. Thus, Wilson was required to file his petition for writ of habeas corpus by March 1, 1999. *See* 28 U.S.C. § 2254(d)(1).

■ Although Wilson's petition bears a date of "March 1, 1999," Habeas Petition at 7, the accompanying memorandum is dated March 16, 2001 and Wilson concedes that he did not deliver his petition into the hands of the prison facility for mailing until March 16, 1999. *See* Certificate of Service (annexed to Petition); Petitioner's Affirmation, filed August 12, 1993, at 3 (following notarization of papers on March 16, 1999, "[t]he petition and Memorandum of Law was [sic] then sent to the Correspondent Department with a disbursement form to cover the cost of the postage to be mailed to the Court."). The petition was received by the Pro Se Clerk of this Court on March 26, 1999. Under the doctrine of *Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), an incarcerated *pro se* habeas corpus petitioner is deemed to have filed a court document on the date the petitioner delivered the document to prison officials for mailing. *See Noble v. Kelly*, 246 F.3d 93, 97–98 (2d Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 197, 151 L.Ed.2d 139 (2001). Thus, Wilson's petition is deemed to have been filed on March 16, 1999, fifteen days after the March 1, 1999, deadline under the AEDPA for filing his petition.

In his submission to the Court, Wilson seeks to excuse his untimely petition by stating that "he was having extreme difficulties receiving legal assistance from the law library and minimal cooperation from the prison administration." Petitioner's Affirmation, filed August 12, 1999, at 3. He asserts that, as a result, the "filing [of] his petition sooner was beyond his control." *Id.* The specific facts offered in support of his claim are that the prison law library did not "pick[ ] up [his] papers" until September 1998; that he had a "clerk" at the prison law library "review" his papers; that the "clerk" told Wilson that he should make certain changes; that he was "advised" that he had to send in an *in forma*

*pauperis* application to a prison office to be completed; that he did not "receive[ ]" his memorandum of law from the law library until March 12, 1999; and that he was not able to notarize his papers until March 16, 2001. *Id.* at 2–3.

■ The Second Circuit has held that the AEDPA's one-year limitations period may be equitably tolled only where a petitioner shows that "extraordinary circumstances prevented him from filing his petition on time." *Smith*, 208 F.3d at 17. In addition, the petitioner seeking equitable tolling must "have acted with reasonable diligence throughout the period he seeks to toll." *Id.* The Second Circuit has noted that equitable tolling may only be applied in "rare and exceptional circumstances." *Id.* (quoting *Turner v. Johnson*, 177 F.3d 390, 391–92 (5th Cir.), *cert. denied*, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 389 (1999)).

■ The circumstances alleged by Wilson do not amount to "extraordinary" circumstances. Most of Wilson's allegations derive from the fact that he was relying on others for legal advice or the preparation of his papers. Courts have uniformly recognized that such circumstances cannot justify equitable tolling. *See, e.g., Miller v. Marr*, 141 F.3d 976, 978 (10th Cir.) (limited library access insufficient to establish "extraordinary circumstances"), *cert. denied*, 525 U.S. 891, 119 S.Ct. 210, 142 L.Ed.2d 173 (1998); *Henderson v. Johnson*, 1 F.Supp.2d 650, 656 (N.D.Tex.1998) (claims that petitioner "did not have professional legal assistance [and] 'did not know what to do' ... are far from the extraordinary circumstances required to toll the statute"); *Saldana v. Artuz*, 2000 WL 1346855, at *2 (S.D.N.Y. Sept.19, 2000) (difficulty accessing library books due to having been removed from state custody for three months and having spent

six months in prison lockdown did not amount to extraordinary circumstances); *United States v. Van Poyck,* 980 F.Supp. 1108, 1111 (C.D.Cal.1997) (petitioner's assertion that "he has been unable to access the prison's purportedly small law library for an unspecified number of days" insufficient to equitably toll limitations period).

Indeed, petitioners acting under much more serious disabilities than Wilson have not been able to take advantage of the equitable tolling doctrine. *See, e.g., Tan v. Bennett,* 2001 WL 823869, at *2 (S.D.N.Y. July 20, 2001) (lack of English proficiency does not justify equitable tolling) (citing cases); *Zarvela v. Artuz,* 1999 WL 1487595, at *2 (E.D.N.Y. Dec.3, 1999) (lack of access to a law clerk, illiteracy, lack of English fluency and ignorance of the law are insufficient to demonstrate that circumstances effectively prohibited petitioner from filing in a timely manner), *rev'd on other grounds,* 254 F.3d 374 (2d Cir.2001). While Wilson may have believed that he needed legal assistance in filing his petition, courts have also held that a lack of legal knowledge cannot excuse a delay in filing a petition. *See, e.g., Scarola v. Kelly,* 2001 WL 849449, at *4 (S.D.N.Y. July 27, 2001) ("ignorance of the law [has] been considered and rejected by courts as insufficient to demonstrate that circumstances effectively prohibited petitioner from filing in a timely manner") (citing cases); *Harrison v. Galaza,* 1999 WL 58594, at *3 (N.D.Cal. Feb.4 1999) ("a lack of knowledge of the law is not sufficient to constitute extraordinary circumstances"); *Eisermann v. Penarosa,* 33 F.Supp.2d 1269, 1273 (D.Hawai+i 1999) ("Petitioner's alleged lack of legal expertise does not excuse his delay").

Wilson's remaining explanations for his tardiness—the delay occasioned by submitting his *in forma pauperis* petition and arranging for notarization of his papers— amount to no more than what could have been expected from the normal operation of a prison system. As one case noted:

> Congress gave prisoners one year to get to federal court after their convictions became final.... That one year gives the prisoner plenty of time to get to federal court and leaves room for the inevitable delays in mail, unpredictable lockdowns, as well as interruptions in research and writing time common in prison.

*Brooks v. Olivarez,* 1998 WL 474160, at *2 (N.D.Cal. Aug.5, 1998); *accord Atkins v. Harris,* 1999 WL 13719, at *2 (N.D.Cal.1999) ("lockdowns, restricted library access and transfers do not constitute extraordinary circumstances sufficient to equitably toll the [AEDPA] statute of limitations. Prisoners familiar with the routine restrictions of prison life must take such matters into account when calculating when to file a federal [habeas] petition.").

Because Wilson's explanation for the delay in filing his petition does not amount to "extraordinary circumstances," his petition should be dismissed as untimely.

### III. WILSON'S ABSENCE FROM THE SIDEBAR CONFERENCES

Even if this court were to evaluate the merits of Wilson's claim regarding his absence from the sidebar conferences, it would still deny the petition.

#### A. *Factual Background*

There were two sidebar conferences at issue in Wilson's case: one involving the admissibility of the testimony of Lopez and the other involving the admissibility of the testimony of Detective Shiffman.[2] During

---

2. Prior to these two sidebars, defense counsel

had indicated during an earlier sidebar that

the cross-examination of Lopez, the People objected to the defense counsel's questioning of Lopez concerning Lopez's knowledge of whether Wilson had previously been shot. (Tr. 269–71). While Lopez had already testified that he had not seen Wilson limping on the day of Brown's murder (Tr. 269), defense counsel wished to question Lopez on his knowledge of the prior shooting on the theory that if Wilson had in fact been shot and injured, this would undermine Lopez's identification of the defendant as an individual who was running away from the scene. (Tr. 270). The trial court sustained the prosecutor's objection, ruling that any evidence about the shooting would need to be proved by extrinsic evidence. (Tr. 271).

Following the direct examination of Detective Shiffman (who arrested Wilson the day after the murder and also denied seeing Wilson limping (Tr. 370–71)), defense counsel sought leave during a sidebar to ask the Detective during cross-examination whether he knew Wilson had previously been shot. (Tr. 372–73). The People opposed the application and it was denied by the trial court. (*Id.*).

B. *Exhaustion*

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *see* 28 U.S.C. § 2254(b)(1). In order for a claim to be considered exhausted, it must have been presented fully and fairly in federal constitutional terms to the State courts. *See, e.g., Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); *Picard v. Connor,* 404

U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Morgan v. Jackson,* 869 F.2d 682, 684 (2d Cir.1989). Petitioners may "fairly present" their federal claims in state court by, *inter alia,* presenting explicit constitutional arguments, "relying on federal and state cases that employ a constitutional analysis, asserting the claim in terms that call to mind a specific right protected by the Constitution, or alleging facts that fall well within the mainstream of constitutional litigation." *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 124 (2d Cir.1995) (citations and internal quotation marks omitted); *accord Daye v. Attorney General,* 696 F.2d 186, 192–93 (2d Cir.1982) ("the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature"), *cert. denied* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984).

■ Wilson presented his claim before the Appellate Division, First Department in federal constitutional terms, by citing to federal case law. *See* Brief for Defendant–Appellant at 15. He also exhausted his remedies in state court by raising the same issue in his letter seeking leave to appeal from the New York State Court of Appeals, which asked that court to review the issues presented in his Appellate Division brief. *See, e.g., Morgan v. Bennett,* 204 F.3d 360, 369–70 (2d Cir.) (letter asking Court of Appeals to review all issues raised in the lower court briefs sufficient for exhaustion purposes), *cert. denied,* 531 U.S. 819, 121 S.Ct. 59, 148 L.Ed.2d 26 (2000); *accord Davis v. Strack,* 270 F.3d 111, 2001 WL 1336002 at *8 (2d Cir. October 29, 2001). Therefore, for purposes of habeas review, Wilson's claim is considered exhausted.

his client wished to be present at that and any future sidebars, a request that was denied by the trial judge. (Tr. 75; *see* also Tr. 66). Because defense counsel's objection to the proposed testimony was sustained at this earlier sidebar (Tr. 79–80), the defendant's absence from the earlier sidebar is not relevant to this petition.

## C. *Standard of Review*

28 U.S.C. § 2254(d) requires deference to a state court's determination of a habeas petitioner's federal claims where the determination is made on the merits. A state court ruling is "on the merits" where the court issues "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir.2001). Such was the case here as the Appellate Division directly ruled on Wilson's claim regarding his right to be present at the sidebar conferences.

The AEDPA requires the federal court to determine if the New York court's adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

## D. *The Merits of Wilson's Claim*

A criminal defendant has a right both under the Confrontation Clause and the Due Process Clause to be present at trial. *See United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). This right permits the defendant to be "present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Where, as here, no witnesses or evidence are being presented at the proceeding at issue (thus not implicating any right under the Confrontation Clause), a criminal defendant has a due process right to be present "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge" but only to the extent that "a fair and just hearing would be thwarted by his absence." *Snyder v. Massachusetts*, 291 U.S. 97, 105–106, 107–108, 54 S.Ct. 330, 78 L.Ed. 674 (1934). Thus, courts dealing with a defendant's claims of exclusion from a sidebar conference during trial have invariably found no due process violation on the ground that "the Federal Constitution does not require a defendant's presence at sidebar conferences." *Gaiter v. Lord*, 917 F.Supp. 145, 152 (E.D.N.Y.1996) (citing cases); *accord United States v. McCoy*, 8 F.3d 495, 496 (7th Cir.1993) (defendant's "absence from [nine sidebar] conferences did not detract from his defense or in any other way affect the fundamental fairness of his trial"); *McKnight v. Superintendent Albauch*, 2000 WL 1072351 at *6 (S.D.N.Y. Aug.2, 2000); *Rodriguez v. Walker*, 1999 WL 61834 at *4 (S.D.N.Y. Feb.9, 1999) *Williams v. McCoy*, 7 F.Supp.2d 214, 221 (E.D.N.Y.June 3, 1998); *James v. Senkowski*, 1998 WL 217903, at *8 (S.D.N.Y. Apr.28, 1998); *Zaire v. Mitchell*, 1996 WL 82391 at *3 (S.D.N.Y. Feb.27, 1996).

The sidebar conferences in Wilson's case dealt exclusively with the scope of the cross-examination of two witnesses: that is, the trial court's determination of what evidence the jury would be allowed to hear. Wilson asserts that he was "in the best position to provide information to persuade the Court" that questions regarding the prior shooting were relevant and that the side-bar "implicated defendant's peculiar factual knowledge." *See* Petitioner's Memorandum of Law, dated March 16, 1999 (unnumbered page). This assertion,

however, misses the point inasmuch as all evidentiary rulings ultimately rely on some "factual" predicate and defendants will frequently have information regarding that predicate. While New York state law recognizes a defendant's right to be present where "the proceeding involve[s] factual matters about which defendant might have peculiar knowledge that would be useful in advancing the defendant's or countering the [prosecutor's] position," *People v. Dokes*, 79 N.Y.2d 656, 660, 584 N.Y.S.2d 761, 595 N.E.2d 836 (1992), federal law has no such doctrine. Thus the discussion of "factual" matters does not by itself trigger a federal constitutional right to be present at the sidebar.

Here, the arguments presented during the sidebars dealt exclusively with the appropriate scope of the cross-examination: specifically, whether the witnesses should testify regarding the alleged shooting of Wilson, which had occurred prior to the murder. (Tr. 269–71, 372–73). The admissibility of evidence is within the discretion of the trial court to determine. *See, e.g., United States v. Salameh*, 152 F.3d 88, 131 (2d Cir.1998). There is no basis for concluding that Wilson's presence at the arguments on admissibility would have had any "reasonably substantial" relation to his opportunity to defend against the charges. *Snyder*, 291 U.S. at 105–106, 54 S.Ct. 330. Defense counsel had unfettered access to Wilson in order to obtain factual information from him to support the legal argument that the evidence regarding the alleged prior shooting should be admitted. As a result, Wilson's absence from the sidebar "did not affect the court's ability to decide the issue or otherwise diminish [the defendant's] ability to defend against the charges, and [the defendant's] interests were adequately protected by his counsel's presence at the conference." *McCoy*, 8 F.3d at 497 (citing *United States v. Shukitis*, 877 F.2d 1322, 1330 (7th Cir.1989)).

Because the First Department's conclusion that Wilson was properly excluded from the sidebar conferences did not amount to an "unreasonable application" of Supreme Court law under 28 U.S.C. § 2254(d), Wilson is not entitled to habeas corpus relief.

### Conclusion

Wilson's petition for habeas corpus should be denied.

### Notice of Procedure for Filing of Objections to this Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report to file any written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Loretta A. Preska, 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned at 40 Centre Street, New York, New York 10007. Any requests for an extension of time to file objections must be directed to Judge Preska. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).